**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

CHANTEL NNEBO

*Petitioners*,

v.

ZACHARY CROSSON, et al.,

*Respondents*.

**CV-26-317-GF-BMM**

**ORDER**

## INTRODUCTION

Chantel Nnebo ("Petitioner") petitions this Court for habeas release pursuant to 28 U.S.C. § 2241, following her detention by the United States (the "Government"). (Doc. 1.) The Court finds that the Petition establishes a prima facia case for relief. (Doc. 3.) The Court directed the Government to show cause why the writ of habeas corpus should not be granted. (*Id.*) The Court will now discuss whether habeas relief should be granted for Petitioner.

## LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the

Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

**DISCUSSION**

This Court previously held that the arrest of noncitizens without a warrant or a pre-arrest individualized determination that the noncitizen is likely to escape violates their constitutional rights. *Hernandez v. Crosson*, No. 26-cv-280, 2026 WL 2568523, at *4 (D. Mont. Aug. 31, 2026). The Court further reiterates that the INA applies § 1226 to noncitizens detained in the interior of the country and requires a bond hearing. *See Rodriguez Vazquez*, 2026 WL 2196424.

A noncitizen may be arrested and detained under § 1226 only "on a warrant issued by the Attorney General." 8 U.S.C. § 1226(a) (citation modified). "Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). It follows that absent a warrant a noncitizen may not be arrested and detained under section 1226(a)." *Brice v. Gantt, et al.,* No. CIV-26-1421-D, 2026 WL 2243982, at *3 (W.D. Okla. Aug. 4, 2026) (quoting *Sergio P. v. Bondi*, No. 26-CV-1538, 2026 WL 497290, at *2 (D. Minn. Feb. 23, 2026) (citation modified)).

One exception exists to the warrant requirement under § 1226. Authorized officers may "interrogate any alien or person believed to be an alien" concerning that person's "right to be or to remain in the United States," and can arrest that

person "if [the officer] has reason to believe that the [person] . . . is in the United States in violation of any . . . law or regulation [regulating the admission, exclusion, expulsion, or removal of aliens] and *is likely to escape* before a warrant can be obtained for his arrest." 8 U.S.C.A. § 1357(a)(1), (2) (emphasis added). An authorized officer's determination that an arrested person "is likely to escape" requires that the arrested person must "be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States." *Id.*; *see Makuiza v. Wesling*, 826 F. Supp. 3d 176, 180 (D. Me. 2026).

"[A] custody determination must ordinarily be made within 48 hours, accompanied by a notice to appear, and in the case of continued custody a warrant will be issued *post hoc*," when arrests properly are made without a warrant based on an authorized officers' perception of likely escape. *Makuiza*, 826 F. Supp. 3d at 180 (citing 8 C.F.R. § 287.3(d)). In other words, a proper arrest pursuant to §1226 requires either an arrest warrant that is issued before arrest, or a reasonable belief by an authorized officer upon initial investigation that a noncitizen is in the United States in violation of the law and *presents a risk of escape* if not arrested before a warrant can be obtained.

Petitioner entered the county lawfully in April 2024. (Doc. 15 at 1.) Petitioner applied to change her status with United States Customs and

Immigration Services ("USCIS") before her visa expired. (*Id.*) (*See* Sealed Exhibit, Doc. 13, 5.) Petitioner's application remains pending. Petitioner is within a period of authorized stay and must remain in the United States to maintain her change of status request. *See*, e.g., 8. C.F.R. 248.1(f) (nonimmigrant who departs the United States while a change of status application is pending abandons the application); cf. USCIS, Policy Manual – Chapter 4 – Extensions, Change of Status, and Extension of Petition Validity, https://www.uscis.gov/policy-manual/volume-2-part-a-chapter-4 (even for untimely change of status applications, USCIS considers applicant to "have maintained lawful status" while a petition for change of status is pending) ("*USCIS Policy Manuel*"). Petitioner has no criminal record and remains in the process of attempting to changer her immigration status at the time of these events.

A Ponderosa County Sheriff's Office Deputy (the "PCD") called the Sweetgrass Border Patrol Station concerning Petitioner as the PDC stopped Petitioner in Conrad, Montana around 2:55 p.m. on October 12, 2026. (Doc. 9 at 3.) PCD allegedly informed Petitioner that he pulled her over because Petitioner failed to move into the left lane as Petitioner approached a patrol car pulled over on the side of the road. (Doc. 15-2 at ¶ 2.) The Government failed to include this information in the I-213.

Petitioner informed officers she was having trouble with her visa. (Doc. 9 at 3.) Record checks revealed Petitioner overstayed a visa. (*Id.*) Agents from Sweetgrass Station allegedly served Petitioner the Warrant for Arrest Form I-200. (*Id.*) It remains undisputed that the PCD contacted Border Patrol. (*Id.*) Petitioner alleges the PCD completed the phone call with Sweetgrass Station and PCD immediately handcuffed Petitioner and placed her in the patrol car. (Doc. 15-2 at ¶ 6-7.) PCD informed Petitioner that he was arresting Petitioner because of Petitioner's illegal immigration status and having overstayed her visa. (*Id*. at ¶ 8.) PCD transported Petitioner to the Pondera County sheriff's office in Conrad, Montana. (*Id*. at ¶ 9.)

Petitioner alleges two Border Patrol officers arrived at the sheriff's office after about 15 minutes. (*Id*. at ¶ 10.) The Border Patrol officers informed Petitioner they were taking her to Sweetgrass Station. (*Id.*) Petitioner further alleges the Border Patrol officers did not show or give Petitioner any paperwork while at the Pondera County sheriff's office in Conrad. (*Id.*)

Petitioner alleges that a Border Patrol agent asked Petitioner about her USCIS application and the Border Patrol agent informed Pettioner that the system showed USCIS was waiting on information as of last year. (*Id*. at ¶ 13.) Petitioner explained that this statement was not true as Petitioner and her attorneys recently

had provided USCIS with additional information. (*Id*.) Petitioner's records confirm this account. (See Sealed Exhibit, Doc. 13, 5.)

The Court concludes the arrest occurred as soon as Petitioner was transported to Sweetgrass Station. The warrant states it was served on Petitioner at Sweetgrass Station at 3:15 p.m. (Doc. 9 at 6.) The Court finds that the chain of events render it impossible that Border Patrol Agents served the warrant on Petitioner upon her arrest in Conrad.

Petitioner argues the arrest qualifies as unlawful because the arresting border patrol agents did not serve the warrant on Petitioner until after her arrest. (Doc. 15 at 11.) Petitioner further argues the arrest proves unlawful because the Government issued Petitioner's Notice to Appear after the officers had arrested Petitioner. (*Id.* at 6-10.) Petitioner lastly argues she was entitled to a pre-deprivation hearing and the Government's failure to provide a pre-deprivation hearing warrants habeas release. (*Id*. at 14-15.) The Court need not address Petitioner's arrest and will discuss only the argument regarding a pre-deprivation hearing.

Other district courts in the Ninth Circuit have applied the three *Mathews* factors when applying due process requirements to people in similar situations as Petitioner. *See e.g., Holani v. Albarran,* No. 26-cv-013, 2026 WL 2654823 (N.D. Cal. Sep 8, 2026); *Rana v. Bondi*, No. 26-cv-244, 2026 WL 472800, at *3 (W.D. Wash. Feb. 19, 2026); *Cordero Pelico v. Kaiser*, No. 25-cv-286, 2025 WL

2822876, at *6 (N.D. Cal. October 3, 2025); *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Mathews* requires consideration of (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. *Mathews*, 424 U.S. at 335. When evaluating the third factor, courts must analyze the governmental function involved, as well as the fiscal and administrative burdens that additional or substitute procedures would require. *Id*. at 335.

A finding in favor of an immigration petitioner under *Mathews* requires immediate release to restore the status quo. *See e.g., Rana*, 2026 WL 472800, at *4–5; *Camacho*, 2026 WL 1243459 at *8; *K.G.M.Q. v. Bondi*, No. 2:26-CV-00506-TL, 2026 WL 962609, at *12 (W.D. Wash. Apr. 9, 2026); *Kirykovich v. Hernandez*, 26-cv-695, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) ("Because the constitutional violation is the absence of pre-deprivation process, the proper remedy is to restore the status quo ante—that is, to return [the petitioner] to the conditions that existed before his unlawful detention."). The status quo is "the last uncontested status which preceded the pending controversy." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963) (citation omitted). The Court will address each *Mathews* factor starting with the private interest affected.

Petitioner has lived in Great Falls for over two years. (Doc. 15 at 2.) Petitioner actively attends church at the Kingdon Hall of Jehovah's Witnesses in Great Falls. (*Id.*) Petitioner has three siblings all of whom are U.S. citizens. (*Id.*)

Petitioner notified USCIS of her change of address when Petitioner moved apartments in August 2025. (*Id.*) USCIS uses Petitioner's address in Great Falls to communicate with Petitioner regarding her immigration application. (*Id.*)

Petitioner has been a noncitizen physically present in the United States since 2024 and has a protected liberty interest in her freedom from detention. The Government admitted Petitioner into the country on a visa and the Government did not seek to detain Petitioner within a reasonable time after Petitioner's visa expired. "[The] [p]petitioner's multiple applications and numerous domestic flights make clear that DHS had recurrent notice that [p]etitioner remained in the United States long after the expiration of her B-2 visa and corresponding status" *Heliera Oliveria Tinco, Petr., v. Sergio Albarran, et al., Respondents.,* No. 26-cv-505, 2026 WL 2949219, at *4 (E.D. Cal. Oct. 1, 2026). The facts remain undisputed that Petitioner was in the process of applying for stay when the Government detained her. (Doc. 15 at 1.)

The Government has been aware of Petitioner's overstay for about two years and now decided it is appropriate to detain Petitioner. The Court agrees with other district courts in the Ninth Circuit that Petitioner possesses a significant liberty interest in remaining free from detention. *Medvezhov v. Warden, Golden State Annex Det. Facility*, No. 1:26-cv-05918-KES-SAB, 2026 WL 2234501, at *2 (E.D. Cal. Aug. 3, 2026) (same where the petitioner lived freely in the United States for

approximately four years and the government "deci[ded] *not* to detain [him], and instead to grant him work authorization while his asylum claim proceeded") (emphasis in original); *Carrasquel v. Warden, Cal. City Immigration Processing Ctr.*, No. 1:26-cv-06867-DAD-JDP, 2026 WL 2621102 (E.D. Cal. Sept. 4, 2026) (same where the petitioner lived in the United States for twelve years, had been granted temporary protected status after his visa expired, and was not promptly detained after the expiration of either his visa or temporary protected status); *Orozco-Salazar v. Warden Desert View Facility, Adelanto ICE Processing Ctr.*, No. 5:26-cv-04555-KES, 2026 WL 2497334 (C.D. Cal. Aug. 25, 2026) (same where the petitioner lived at liberty for three years, had never applied for alternative work authorization or asylum, and was detained nearly two years after the expiration of his visa); *Chaparro Ayala v. Albarran*, No. 26-cv-09430-CRB, 2026 WL 2722780, at *4 (N.D. Cal. Sept. 15, 2026) (same where the petitioner lived in the United States for seven years and "did not have a single incident of contact with any federal government agency prior to his detention") (citation modified); *Tello Vazquez v. Mullin*, No. 26-cv-2039-KKE, 2026 WL 1911507 (W.D. Wash. July 2, 2026) (similar).

The Court will follow the reasoning of these other district courts in the Ninth District conclude that where, as here, a noncitizen builds a life in the United States after having been granted entry pursuant to a visa—such that the Government was

not only aware of but approved of the noncitizen's initial presence in the country—that noncitizen develops a vested liberty interest in remaining free from detention when the Government does not act to detain the noncitizen pursuant to 8 U.S.C. § 1227(a) and § 1226(a) within a reasonable time following the expiration of their nonimmigrant status.

Applying the second *Mathews* factor, the risk of erroneous deprivation without a bond hearing remains high. *Singh v. Warden*, No. 26-cv-250, 2026 WL 1099167, at 3* (E.D. Cal. Apr. 23, 2026). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation remains high, given the possibility that Petitioner's detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community") (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)).

The Court remains unpersuaded by the Government's attempt at labeling Petitioner as a flight risk. (Doc. 11 at 11.) Petitioner has a pending application change in which she provided the Government with her address. Petitioner has three siblings in the country who live in Great Falls, Montana. Petitioner has further complied with the law by filing the application to change her status in the first place. Petitioner has lived in Montana for the past two years. The Court finds

nothing in the record about Petitioner establishes that she meets the criteria for a flight risk.

Applying the third *Mathews* factor, the Government's interest in detaining Petitioner without . . . a hearing is 'low.' " *Singh*, 2026 WL at 4* (quoting *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). The Court acknowledges that the Government has an interest in the enforcement of its immigration laws but also recognizes that the Government's interest in detaining Petitioner without pre-deprivation procedural protections is substantially low. *Helieara*, 2026 WL 2949219 at *6 (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)). "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

The Court concludes all three *Mathews* factors weigh in favor of Petitioner. Petitioner has lived in the community of Great Falls for two years. Outside of Petitioner's alleged actions on October 12, 2026, Petitioner maintains a clean record. The Government has been fully aware of Petitioner's overstay of her visa. Petitioner gained a substantial due process interest in remaining out of custody in this country.

The Government argues that even if a pre-deprivation bond hearing was required, the no-transport order has prevented ICE from making Petitioner available for a bond hearing before an immigration judge. The Government has the legal authority and ability to conduct remote hearings. *See* 8 U.S.C. § 1229a(b)(2)(A)(iii) (authorizing hearings "through video conference"); *See* OCIJ Immigration Court Practice Manual, § 3.6(a) (providing that an "Immigration Judge may conduct removal hearings. . . by video conference"). The Government detained Petitioner on October 12, 2026, and the Government did not communicate with the Court about its alleged non-ability to conduct a pre-deprivation hearing. The Court concludes that the Government's decision to not provide pre-deprivation process through a video conference does not excuse the Government's obligation to provide a pre-deprivation hearing.

As to whether Petitioner should be released, the Court notes that Petitioner's detention provided the impetus for the pending controversy. Therefore, Petitioner should be released as that was his status prior to re-detention. *Tanner Motor Livery, Ltd.,* 316 F.2d at 809. To hold a bond hearing at this stage would not cure the underlying constitutional violation and immediate release represents the only way to return the status quo.

The Court determines that immediate release proves appropriate, available, and proper in this case to remedy the constitutional violations committed by the

Government against Petitioner. The Court defers ruling on the matter of attorneys' fees and costs. Should Petitioner's counsel wish to pursue a claim for attorneys' fees and costs under the Equal Access to Justice Act (EAJA), they are instructed to file a separate motion on the issue in accordance with Local Rules.

Accordingly, **IT IS SO ORDERED.**

- Nnebo's Petition (Doc. 1) is **GRANTED.**
- The Court orders the Government to release Nnebo from custody within 24 hours of this Order, under appropriate conditions of release, and to facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.
- **IT IS FURTHER ORDERED** that the Government must return Nnebo's personal property, including any personal identification and employment authorization documents, upon her release**.**
- **IT IS FURTHER ORDERED** that the Government is **PERMANENTLY ENJOINED** from detaining Nnebo pursuant to 8 U.S.C. § 1225(b)(2)(A).
- **IT IS FURTHER ORDERED** that the Government may not re-detain Petitioner pursuant to 8 U.S.C. § 1226(a) during the pendency of her current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is

appropriate under 8 U.S.C. § 1226(a) and its implementing regulations. At this hearing, the Government must bear the burden of establishing that detention is appropriate by clear and convincing evidence.

- If Petitioner becomes subject to a final order of removal and Petitioner receives notice of such order, the Government may detain Petitioner for the sole and limited purpose of executing removal pursuant to 8 U.S.C. § 1231(a)(2)(A). In such an event, Respondents **SHALL** provide a bond hearing in the timeframe required by law.
- The Court orders the Government to certify compliance with this Order by filing on the docket.
- The Court retains jurisdiction to enforce its order and judgment. Nnebo may move to reopen this case to enforce the judgment without filing a separate case.

**DATED** this 30th day of October, 2026.

Brian Morris, Chief District Judge
United States District Court